## 16862. THOMOSON v. GARNER.

The petition as amended failed to show a compliance by the plaintiff with the obligation imposed upon him by the executory contract sued upon; and consequently the court did not err in dismissing the suit, on demurrer.

DECIDED MAY 15, 1926.

Complaint; from Gwinnett superior court—Judge Stark. September 8, 1925.

Application for certiorari was denied by the Supreme Court.

Thomoson sued Garner upon the following contract: "Know all men by these presents that the undersigned, being stockholders in the Bank of Lawrenceville and desiring to open and operate said bank for the purpose of saving depositors and the stockholders as fully as possible without loss to either, hereby acknowledge ourselves bound unto T. S. Thomoson in the sum opposite our names hereafter attached to this instrument, the same to be liquidated and determined as hereinafter set out. In order to make the Bank of Lawrenceville solvent and to relieve the capital stock from being impaired, it is necessary for the stockholders of said institution to voluntarily raise an assessment of sixty per cent. of the capital stock of said bank, or fifteen thousand dollars, and in order that said assessment may not have to be made and the money raised, the said T. S. Thomoson has agreed to guarantee the payment of fifteen thousand dollars of the classified worthless paper held by said Bank of Lawrenceville, and in order to secure that guarantee will place with said Bank of Lawrenceville time-deposit certificates amounting to fifteen thousand dollars, which guarantee will relieve the necessity of a voluntary assessment of the stockholders at this time and secure the opening of the bank for business; and in consideration of the said Thomoson doing this, the undersigned stockholders of the said Bank of Lawrenceville agree to indemnify the said Thomoson against any loss he may sustain in the collection of said papers which he secures to the extent of the shares of stock placed opposite our names, and for the purpose of collateral we agree to transfer said stock to the said Thomoson until the loss, if any, is fully paid, and each agrees to pay proportionately his or her share of loss, if there should be loss, in propor-

Indemnity, 31 C. J. p. 465, n. 85,

tion to the number of shares shown opposite our names. It is understood and agreed that when said paper (notes) which the said Thomoson secures is collected it shall go to the credit of this obligation, and such papers as may not be collected shall finally become the property of the undersigned when the said Thomoson has been fully satisfied and indemnified against loss by securing said bank paper as aforesaid; and should the said Thomoson sustain no loss in securing said bank paper, then this obligation to be void, otherwise of full force and effect. This obligation shall become due and payable in three equal divisions, and should there not be a sufficient amount collected to pay one third of said amount by January 1, 1922, then and in that event we agree to pay the said Thomoson 8 per cent. interest on any deficiency for the time it may run, and the same on each of the other payments which are due January 1, 1923, and January 1, 1924. Now should the said undersigned, or their executors, administrators well and truly discharge the obligations under this contract, then this obligation to be void. Given under the hand and seal of each party hereto this 3rd day of June, 1921." The defendant signed as holder of six shares.

The plaintiff alleged, in substance, that he complied with all the terms and conditions of the contract, and that the Bank of Lawrenceville, in which the defendant owned six shares of stock, was reopened and the defendant became liable to him under said contract; that the amount due him by the defendant was $120 and interest; and that he (plaintiff) was not able to collect from the notes specified in the contract so as to reimburse himself for the money and time certificates advanced. The defendant demurred generally and specially, contending that the petition failed to set forth a cause of action; that it was nowhere alleged that the plaintiff made good his guaranty by paying to the bank $15,000 as provided in the contract, which would have been necessary before he would have sustained any loss that would have entitled him to sue therefor; that it was not alleged that the plaintiff made any effort to collect the classified worthless paper referred to in the contract, or that he had exhausted his legal remedies in an effort to collect the same; that the petition alleges a loss upon time certificates which he had advanced, when the contract shows on its face that it was never contemplated that the defendants and the

other signers of the contract were to be liable for any loss that might be sustained by the plaintiff upon the time certificates placed with the bank as security for his guaranty, but, on the contrary, the defendant and the other signers were to be liable to the plaintiff for their pro rata share of whatever loss he might sustain, should there be any loss, in case the plaintiff paid to said bank $15,000 in fulfilment of his contract of guaranty and was unable to collect the papers for the payment of which he stood as guarantor; that the petition failed to show how much loss was sustained for money advanced, and when and for what purpose the money was advanced, and how much loss was sustained on account of the advancement of time certificates, and when the time certificates were advanced and the actual value thereof, and whether they were advanced as security for his guaranty; that the petition nowhere alleged that the plaintiff complied with his contract by paying into said bank $15,000 or any other sum after the contract was signed, or at any time that it could have been applied to the payment of said notes as per his contract as guarantor; and that it was not alleged that said bank had ever been paid by the plaintiff the said $15,000, or anything of the value of $15,000, upon his said contract.

An amendment to the petition was filed, in which it is not alleged that the terms of the contract sued on were in any way altered or changed, but the amendment appears to interpret the meaning of the contract and sets up facts alleged to be in compliance therewith. In this amendment it is alleged that in an effort to reopen the said bank without the stockholders having to put up $15,000, it was arranged between the stockholders and the State superintendent of banks that if the plaintiff would place with the bank $15,000 worth of time certificates on the said bank, that amount of time certificates would be charged out of the liabilities of the bank, thereby reducing its liabilities and in this way making the bank solvent and leaving its capital stock unimpaired so that it could reopen for business; that pursuant to said contract the plaintiff turned over to the bank $15,000 of time certificates which he held against it which were accepted by the bank and charged off its liabilities and cancelled, and that the bank reopened and resumed business; that the defendant was a stockholder and accepted the benefits of this arrangement, and the

plaintiff was out said amount of $15,000 time certificates which he held; that the total amount of the classified worthless paper of said bank turned over to the plaintiff under said contract after he had placed with it time certificates amounted to $20,779.23; that these notes were turned over by the plaintiff to the bank for collection and credit of amounts collected on said $15,000 obligation as aforesaid, and a trust receipt was taken from the bank when it reopened; that the plaintiff, co-operating with the bank, did everything in his power to collect said notes; that the bank collected on said notes $1497.02 during 1921 and 1922; that on January 1, 1922, the bank paid to the plaintiff $5,000 on said obligation which was due at that time, using the $1497.02 collected on said notes, and obtaining the balance from some source unknown to the plaintiff; that since that time the plaintiff has collected $40, which together with the $1497.02 is all that was ever collected on said notes; that the defendant, being a stockholder of said bank and operating the same through its employees and agents, is responsible for all the bank did in the transaction, the same as if done by him personally, and that the plaintiff complied with every obligation of said contract and the defendant is liable to him as charged. To the petition as amended the defendant renewed his demurrer; and the demurrer being sustained, the plaintiff excepted.

M. D. Irwin, I. L. Oakes, for plaintiff.

G. F. & John I. Kelley, for defendant.

JENKINS, P. J. (After stating the foregoing facts.) The suit being on an executory contract, the question to be determined is whether the petition shows that the plaintiff has himself complied with the obligations imposed upon him by the agreement. The contention which appears to be mainly urged by plaintiff is "that what was done as set forth in the petition and the amendment was a full compliance with the contract and the equivalent of paying $15,000 in cash, because if the bank was made solvent as set forth in the contract, there would be no difference in plaintiff paying into the bank $15,000 in cash and turning over to the bank $15,000 worth of its own obligations which were accepted as cash and cancelled by the bank; because if $15,000 had been turned over to the bank in cash, the same money could and should have been used by the bank in paying and retiring its own obligation. Besides, even if there should have been a slight departure from the

exact terms of the contract, the defendant, as a stockholder in the bank, would be bound by what the bank did, and could not accept plaintiff's $15,000 in time certificates and have the same cancelled and retired as an obligation against the bank, and have the bank reopened, and then claim that plaintiff should not be reimbursed because time certificates were used and not actual cash." The contention of the defendant in this respect is that "instead of paying the $15,000 which he guaranteed to pay, the plaintiff tried to turn the contract around and make it one whereby defendant and the other signers of the contract were to guarantee his time certificates in a defunct, crippled bank to be worth one hundred cents in the dollar. In other words, instead of complying with his contract, he sought to pour his time certificates, which were worth less than par, in the tills of the bank, and then turn on defendant and say, 'You pay me one hundred cents in the dollar for those certificates.' "

The suit being on contract, we do not think that any change in the terms thereof, even though arrived at by the plaintiff and the officials having active management of the bank, would be binding upon the defendant unless such a novation of the agreement was agreed to by him. The question therefore is whether, as alleged by the petition, the plaintiff did actually comply with the obligations assumed by him under the signed agreement. We agree with the contention of the plaintiff that the use of the pre-existing time certificates of deposit could be taken as a compliance with the provisions of the agreement that the plaintiff, "in order to secure that guarantee, will place with said Bank of Lawrenceville time deposit certificates amounting to fifteen thousand dollars." The contract itself sets forth that the making good of the described assets in the amount of $15,000 would make the bank solvent and permit it to be reopened; and if it had been intended to compel Thomoson to pay in $15,000 of new money to secure his guaranty of the bad notes, and thus incidentally furnish additional ready cash for the bank to operate on, it would have been an easy matter to so provide. The expressed purpose of the contract does not, however, purport to require Thomoson to provide ready cash for the use and benefit of the bank; but the whole scheme for its rehabilitation, as expressed by the signed agreement, was that in order to avoid the necessity of the stockholders paying in $15,000

of new assets in the form of money, the assets of the bank were to be increased $15,000 by the act of Thomoson in guaranteeing the payment of $15,000 of the bank's discredited and supposedly worthless assets, thus increasing the bank's actual assets in that amount and thus making good the impaired capital. The contract further required that Thomoson secure his guaranty of the supposedly bad paper, and provided how this should be done, to wit, by placing "with said Bank of Lawrenceville time deposit certificates amounting to $15,000," but the instrument sued on nowhere says that Thomoson is to provide new ready cash for the future operation of the bank, and, as stated, fails to require that the time certificates to be pledged as security for Thomoson's guaranty should represent a deposit of new money. According to the contract, all that was required to restore the impaired capital and make the bank solvent and enable it to be reopened was changing $15,000 of bad assets into good assets, by virtue of Thomoson's secured guaranty thereof.

The plaintiff unquestionably used for the common good of the bank, its depositors and stockholders, his personal assets held by the bank, and it is with some reluctance that we feel compelled to hold that he can recover nothing in the suit maintained on the contract. The executory agreement plainly provides that the impaired capital is to be restored by the plaintiff increasing the assets of the bank by making good $15,000 worth of bad assets. He was to do this by guaranteeing their payment and securing his guaranty in the manner set forth by the contract. Whatever rights, if any, the plaintiff might have against the fellow stockholders in restoring the impaired capital in the manner resorted to, he can not recover on the executory contract sued on, unless he himself shows a compliance on his own part with the obligations therein assumed by him. He agreed to guarantee the bad paper belonging to the bank and to secure his guaranty. The defendants agreed to make good their pro rata share of any losses he might suffer as guarantor by virtue of such guaranty. In point of fact, the petition shows that he did not become guarantor upon this paper at all; but, on the contrary, it shows that he used his time-deposit certificates to buy the paper outright, and sought to collect it as his own property, using the bank merely as a collecting agent, without the bank being concerned as to the success or failure of its

efforts as a collecting agent, save in the performance of its duty in its fiduciary capacity. His suit is to recover what he failed to collect on notes belonging to himself. Except when in contravention of law, parties may contract as they please, and even though the bank as collecting agent for an individual may be charged with the same degree of diligence as would be expected in the collection of its own assets, since the defendants had an interest in the collection of the discredited paper they may have preferred that the bank, as a going concern, collect the notes from its own customers as papers belonging to itself, rather than undertake as agent for an individual to collect them in a mere fiduciary capacity. There might very well be a practical difference in the result. At any rate, the executory contract sued on expressly pointed out the method of procedure, and in a suit based thereon the signers of the contract have a right to stand on its terms.

*Judgment affirmed. Stephens and Bell, JJ., concur.*